# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:                                                    In Proceedings
                                                          Under Chapter 13
CHAD ROBERT BULLOCK

                                                          Case No. 14-40875

            Debtor(s).

### OPINION

On March 1, 2019, this Court entered an order in this case requiring Debtor Chad Robert

Bullock ("Debtor") to file an amended plan to provide for one hundred percent repayment to his

unsecured creditors.  The amendment was precipitated by the Debtor's post-petition receipt of a

$92,430.84 worker's compensation award.  Pursuant to the terms of the order, the amended plan

was to be filed within thirty (30) days.  If the Debtor failed to file the amended plan within the

allotted time, his case was subject to dismissal with the imposition of a permanent bar to

discharge of all scheduled and claimed debts.  A virtually identical order was also entered on

March 1, 2019 in the related adversary case of *Bullock v. Simon* (Adv. No. 14-4087).

On March 14, 2019, the Debtor filed a Notice of Appeal and Statement of Election as to

both March 1, 2019 orders.  He now seeks a stay of the orders—without bond-- pending appeal.[1]

The Trustee objects to a stay absent the payment of a bond and, further, requests dismissal of the

case due to the Debtor's failure to timely comply with the March 1, 2019 orders.

---

[1] The Court notes that Debtor's counsel *only* filed a Motion to Stay in the bankruptcy case.  However, in the motion, counsel references both orders and in his prayer for relief, he requests that both orders be stayed.  Accordingly, despite counsel's filing deficiency, the Court construes the motion as a request to stay the orders in both the bankruptcy case *and* the adversary proceeding.

**FACTS**

The Debtor filed his Chapter 13 petition on August 5, 2014.  Neither the Debtor's

Schedule B nor his Statement of Financial Affairs referenced a potential worker's compensation

claim.  The plan, which was confirmed on October 17, 2014, provided that the Debtor was to

make plan payments of $148.00 per month for a period of sixty (60) months.  A minimum of

$100.00 was to be paid to the Debtor's general unsecured creditors.[2]

On June 28, 2109, the Trustee filed a motion to compel the Debtor to file an amended

plan and an amended Schedule B to address the previously undisclosed worker's compensation

settlement.  In response to the Trustee's motion, the Debtor filed an amended Schedule B on July

6, 2019 to list the settlement.  He also filed an amended Schedule C to claim an exemption in the

settlement proceeds pursuant to 820 ILCS 305/21 and 735 ILCS 5/12-1001(b) respectively.

According to the amended Schedule B, the Debtor was injured at work and initiated a worker's

compensation action against his employer in 2014.  The gross settlement was $125,000.00, of

which the Debtor received $92,430.84.  However, by the time the settlement was disclosed to the

Trustee and to this Court, the Debtor had spent virtually all the proceeds and, as of July 6, 2018,

only $2,750.00 remained.

On July 20, 2018, the Trustee filed a Motion to Compel and for Turnover requesting that

the Debtor be ordered to immediately turnover $92,430.84 to the bankruptcy estate.  He also

requested that the Debtor be required to file an amended plan to provide for turnover of the

funds.  In support of his motion, the Trustee argued that pursuant to 11 U.S.C. §§ 541(a) and

1306(a), the proceeds of the worker's compensation settlement constituted property of the

---

[2] There are $15,088.42 in allowed unsecured claims filed in this case.  The total amount of unsecured debt scheduled
was $28,302.10.

bankruptcy estate which were subject to turnover pursuant to 11 U.S.C. § 542.  He further

asserted that pursuant to *Watters v. McRoberts (In re Watters)*, 167 B.R. 146 (S.D. Ill. 1994), the

funds were disposable income that must be turned over to the estate for the benefit of the

Debtor's unsecured creditors.

The Debtor did not file an objection to the Trustee's motion. Instead, he filed a

Complaint for Declaratory Judgment seeking a declaration, *inter alia*, that the worker's

compensation award was neither property of the bankruptcy estate nor "disposable income" as

defined by the Bankruptcy Code.  The Debtor also requested that the Court find that he was not

required to amend his plan to provide for turnover of exempt property that was acquired post-

petition.

On February 27, 2019 the Court conducted a hearing on both the Motion to Compel and

for Turnover and on the Debtors' complaint.  After hearing the arguments of counsel, the Court

granted the Trustee's motion and denied the relief requested in the Debtor's Complaint.  The

Court's ruling was memorialized in written orders which were entered March 1, 2019.  The

Debtor now seeks to stay enforcement of these orders.

## DISCUSSION

### I. Imposition of a Stay Pending Appeal

Federal Rule of Bankruptcy Procedure 8007 permits a party to petition the bankruptcy

court for a stay of an order or judgment pending appeal in a bankruptcy case. A similar rule,

Federal Rule of Bankruptcy Procedure 7062, applies in adversary proceedings.

The imposition of a stay pending appeal is an "extraordinary remedy" *Karl v. Edelman*,

491 F.2d 684 (7th Cir. 1974), and the movant must satisfy stringent requirements to demonstrate

that a stay is warranted.  *Van Hollen v. FEC*, 2012 WL178569 (D.C. Cir. May 14, 2012).  A stay

pending appeal is "an intrusion into the ordinary process of administration and judicial review. . .

and accordingly is not a matter of right, even if irreparable injury might otherwise result to the

appellant." *Niken v. Holder*, 556 U.S. 418, 427 (2009) (internal citations and quotations

omitted).  The decision as to whether to issue a stay is left to the Court's discretion and the party

seeking the stay bears a "heav[y] burden of justify[ing] the court's exercise of such an

extraordinary remedy." *In re Special Proceedings*, 840 F. Supp. 2d 370, 374 (D.D.C. 2012);

*accord. Landis v. N. Am. Co.*, 299 U.S. 248, 255-56 (1936).

In order to determine whether a stay should be granted, courts consider the following four

factors:  (1) whether the appellant is likely to succeed on the merits of the appeal; (2) whether the

appellant will suffer irreparable injury absent a stay; (3) whether a stay would substantially harm

other parties to the litigation; and (4) whether a stay is in the public interest.  *In the Matter of*

*Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997).  "The standard for granting a

stay pending appeal mirrors that for granting a preliminary injunction."  *In re A & F Enterprises*,

742 F.3d 763, 766 (7th Cir. 2014).  As the Seventh Circuit has explained:

> Applicants for preliminary relief have threshold burdens to demonstrate the first
> two factors:  they must show that they have some likelihood of success on the
> merits and that they will suffer irreparable harm if the requested relief is denied.
> If the movant can make these threshold showings, the court then moves on to
> balance the relative harms considering all four factors.  However, if the movant
> does not make the requisite showings on either of these two factors, the court's
> inquiry into the balance of harms is unnecessary, and the stay should be denied
> without further analysis.

*Forty-Eight Insulations* at 1300-01 (internal citations omitted).  *See also A & F Enterprises, Inc.*

*II*, 742 F.3d 763, 766 (7th Cir. 2014) ("As with a motion for preliminary injunction, a 'sliding

scale' approach applies; the greater the moving party's likelihood of success on the merits, the

less heavily the balance of harms must weigh in its favor and vice versa."); *In re Hamilton*, 95

B.R. 564, 565 (Bankr. N.D. Ill. 1989) ("Courts applying this test impose the burden on the

movant to show that these factors balance in his favor and warrant issuance of a stay while the

appeal is pending").

A. **Likelihood of Success on Appeal**

To obtain a stay pending appeal, the movant must make a "strong" and "substantial"

showing of likelihood of success on appeal. *Adams v. Walker*, 488 F.2d 1064, 1065 (7th Cir.

1973). It is well established that 'mere repetition" of the movant's prior arguments is insufficient

to satisfy this requirement. *Nat'l Assn. of Mfrs. v. Taylor*, 549 F. Supp. 2d 68, 75 (D.D.C. 2008).

Instead, at a minimum, the movant must provide some "reason for revisiting the Court's

conclusions on the merits of the [movant's claims]." *Id.* at 75. In other words, the movant must

provide "new information, authority or analysis to persuade the Court to reconsider its [prior]

decision." *In re Special Proceedings*, 840 F. Supp. 2d. at 372.

In the instant case, the Debtor has made absolutely *no* showing that he is likely to

succeed on the merits of his appeal. Debtor's counsel ignored this requirement entirely at the

April 15, 2019 hearing and, in fact, did not address it in any way. Further, the Debtor provided

no meaningful discussion as to this issue in his pleadings. His argument was confined to the

following conclusory statement:

> As to the likelihood of prevailing on the merits, it is clear that the trustee and the
> court think the appeal has insufficient merit to prevail. It is of course somewhat
> evident that Debtor's counsel believes the appeal has merit and a reasonable
> likelihood of success. However, that scenario is arguably present in nearly every
> appeal filed through the history of jurisprudence. If we decide whether to grant a
> stay pending appeal on the option of the merits as weighed by the trial judge,
> whose opinion is being appealed, it would render illusory the possibility of ever
> obtaining a stay without a bond.

*Debtor's Response to Trustee's Motion for Approval of Supersedeas Bond*, Doc. 87, ¶10.

Nothing further was offered-- not even an explanation as to *why* counsel believes that Debtor has

a "reasonable" likelihood of success on the merits of his appeal.

This Court carefully evaluated the Debtor's claims and explained in extensive detail at

both the February 27, 2019 and April 15, 2019 hearings why it ultimately rejected the Debtor's

position.  The underlying litigation focused on the issue of whether the Debtor's worker's

compensation award-- an exempt asset-- could be considered in calculating the Debtor's

disposable income. The Court will briefly address this issue below.

Seventh Circuit authority expressly permits plan modification where the debtor

experiences a post-confirmation increase in income. As the Court stated in *Germeraad v.*

*Powers*, 826 F.3d 962 (7th Cir. 2016):

> [C]ourts have long recognized that a trustee or an unsecured creditor may seek
> modification when the debtor's financial circumstances change after confirmation
> and result in the debtor's having the ability to pay more…. Allowing the
> bankruptcy court, in its discretion, to approve modification for this reason is
> consistent with Chapter 13's policy of requiring debtors to repay creditors to the
> extent they are able, and it is also supported by the legislative history of the 1984
> amendments to Chapter 13…. Thus, we hold that a bankruptcy court may allow
> modification to increase the debtor's payments if, in its discretion, it concludes
> that a change in the debtor's financial circumstances makes an increase in
> payments affordable**.**

*Id.* at 974 (internal citations omitted).

Not only may the plan be amended to increase the debtor's payments based on after-

acquired income, this income may also be used in calculating the debtor's disposable income—

even if the income is otherwise exempt.  Prior to the enactment of the Bankruptcy Abuse

Prevention and Consumer Protection Act of 2005 ("BAPCPA'), the majority of courts--including

this one—held that exempt property was *not* excluded from a debtor's disposable income.  *See*

*Stuart v, Koch (In re Koch)*, 109 F.3d 1285, 1289 (8th Cir. 1997) ("Chapter 13 contains no language suggesting that exempt post-petition revenues are not Chapter 13 'income'. . . . ); *Watters v. McRoberts*, 167 B.R. 146, 147 (S.D. Ill. 1994) ("since there is no such limitation on income in § 1325(b) [of the Bankruptcy Code], one should not be imposed."); *In re Schnaebel*, 153, B.R. 809, 815 (Bankr. N.D. Ill. 1993) ("without an express or even implicit limitation in § 1325(b) on 'income' relating to its exempt status, this Court will not impose one."). Contrary to the assertions of the Debtor, this conclusion did not change under BAPCPA.

Section 1325(b) of the Bankruptcy Code now defines disposable income as the "current monthly income received by the debtor. . . less amounts reasonably necessary to be expended" for the debtor's and any dependent's support.[3] 11 U.S.C. § 1325(b)(2). Pursuant to 11 U.S.C. § 101(10A), current monthly income is the average monthly income from *all sources received by the debtor, regardless of whether the income is taxable income*. This includes "any amount paid by any entity… on a regular basis for the household expenses of the debtor or the debtor's dependents." The *only* statutory exclusions are benefits received under the Social Security Act, payments to victims of war crimes, and payments to victims of terrorism. *Id.* Similar types of income such as veteran's benefits and worker's compensation awards are *not* statutorily excluded from the current monthly calculation and, therefore, must be considered. As Judge Kelley explained in *In re Brah*, 562 B.R. 922, 924 (Bankr. E.D. Wis. 2017):

---

[3] At the onset of the February 27, 2019 hearing, Debtor's counsel indicated that because the issues involved in this dispute were primarily legal in nature, Debtor had not really addressed the factual issue of whether the worker's compensation proceeds were reasonably necessary for his support and for the support of his dependents. As a result, counsel suggested that it may be necessary to defer any hearing as to that issue. *See* Transcript of Feb. 27, 2019 Hrg.3-4 (Doc. #86). However, the Debtor was subsequently given an opportunity to present evidence of how the worker's compensation proceeds were reasonably necessary for his support. *Id.* At 19-22. Nothing was offered other than an affidavit which detailed how the worker's compensation proceeds were spent.

> After BAPCA, courts have concluded that there can be no debate: since current monthly income does not exclude exempt assets and it is the starting point for calculating disposable income, *disposable income includes exempt assets.*

*Id*. (emphasis added).  *See also In re Royal*, 397 B.R. 88, 101-02 (Bankr. N.D. Ill. 2008) ("Although both the disposable income definition and the current monthly income definition exclude certain items, exempt income is *not* excluded."); *In re Waters*, 384 B.R. 432, 436 (Bankr. N.D. W. Va. 2008) ("With the enactment of BAPCPA in 2005, the split of authority over whether or not exempt assets are to be included in the calculation of disposable income has been statutorily answered by Congress.").  In light of this substantial, well-reasoned authority in support of the Trustee's position, the Court believes that there is little likelihood that the Debtor will succeed on appeal.

### B.  Irreparable Injury if Stay is not Imposed

In addition to demonstrating a strong likelihood of success on appeal, a party seeking to stay a court order under Rule 8007 must also show that they will be irreparably harmed if a stay of the bankruptcy court's order is not granted.  *Forty-Eight Insulations, Inc.*, 115 F.3d at 1300.

The Debtor asserts in his motion that if he complies with the Court's orders, "his appeal would be mooted by the payment in full of the unsecured creditors, which would almost certainly be completed prior to the appeal being decided.  This, Debtor argues, "would effectively negate [his] right to seek appellate review." *Debtor's Motion to Stay Order of the Court*, Doc. 80, ¶ 3. While this may be a legitimate concern, "[i]t is well settled that an appeal being rendered moot does not itself constitute irreparable harm." *In the Matter of 203 North LaSalle Street Partnership,* 190 B.R. 595, 598 (N.D. Ill. 1995).[4]

---

[4] This argument, which was rejected by the Court at hearing, now appears to be moot. The Debtor filed a First Amended Plan on May 2, 2109 which provides for 100% repayment to his unsecured creditors.

At the April 15, 2019 hearing, the Debtor alternatively argued that if he failed to file an

amended plan-- due his inability to afford a plan that provided for 100% repayment to unsecured

creditors-- the Trustee would most certainly request dismissal of the case with a bar to discharge

of all scheduled debts. *See Debtor's Response to Trustee's Motion for Approval of Supersedeas*

*Bond*, Doc. 87, ¶ 6.  Dismissal of the case, the Debtor asserted, would effectively foreclose his

right to a meaningful appeal.  The Court, however, also finds this argument to be without merit.

Under the facts of this case, any harm that may result from the Debtor's present inability

to pay his creditors is entirely self-inflicted.  The Debtor provided the Trustee with an affidavit

dated September 24, 2018 which indicates that the Debtor received a $92,430.94 worker's

compensation award on or about August 17, 2017—two years before his Chapter 13 plan was

scheduled to complete.  However, it is undisputed that the Debtor failed to disclose this

settlement to either the Trustee or to this Court until July 6, 2018.  Further, the Debtor's affidavit

detailed how the proceeds of his settlement were spent.  These expenditures were as follows:

- $37,431.67 to pay off his wife's outstanding loans;
- $15,765.00 for son's college tuition;
- $6,500.00 for dentures;
- $3,500.00 for 14-year old son;
- $3,500.00 for property taxes;
- $1,300.00 for homeowner's insurance;
- $4,600.00 to replace air conditioning/heat pump;
- $1,300.00 to for bathroom repairs;
- $5,000.00 to repay family for previous loans;
- $8,300.00 to pay off his wife's credit cards

*Trustee's Brief in Support of Motion to Compel*, Doc. 65, Ex.1. Absolutely *none* of the settlement

proceeds were used to pay the Debtor's own creditors.    Obviously, at one time the Debtor had

sufficient funds to pay his unsecured creditors in full.  However, due to the Debtor's own

actions, those funds have now been dissipated.  In light of these facts, the Court determines that

the Debtor has not established that he will suffer irreparable harm if a stay pending appeal is not

imposed.

### C.  Substantial Harm to Other Parties if a Stay is Imposed

In order to establish the third criterion for a stay under Rule 8007, it is incumbent upon

the Debtor, as the movant, to show that no other parties will be substantially harmed if a stay is

imposed.[5]

At hearing on April 15, 2019, the Debtor noted that unless a stay was granted, this case

would very likely be dismissed.  He then posited that dismissal of the case would harm creditors

because they would be prevented from receiving their remaining payments under the plan.[6] This

argument is baseless.  The Debtor filed his Chapter 13 petition on August 5, 2014.  As a result,

the Debtor's creditors have been prohibited from attempting to collect their debts for over 54

months. Final adjudication of this appeal could take months or even years, By the time that this

matter is finally concluded, the statute of limitations for collection of some of the debts likely

will have expired, leaving some of the Debtor's creditors with no recourse whatsoever.  This is

particularly troubling in light of the fact that creditors were prevented from receiving repayment

---

[5] Because the Debtor has failed to establish both that he is likely to succeed on appeal or that he will be irreparably harmed if a stay is not granted, the Court is not required to conduct further analysis as to the remaining factors. *Forty-Eight Insulations, Inc.*, 115 F.3d at 1300-01. However, it will do so out of an abundance of caution.

[6] As indicated *supra*, the Debtor's monthly payment under the plan to all creditors totals only $148.00.  The Court further notes that there are only a few months remaining under the Debtor's sixty-month plan.  Therefore, contrary to Debtor's assertions, any amounts that creditors would continue to receive under the plan would be negligible.

in full—despite the Debtor's clear ability to do so—due to the Debtor's dissipation of assets.  If

this case was dismissed, creditors would be free to collect what is owed to them without the

constraints of bankruptcy.  The Court believes that the prospect of prolonged litigation subjects

creditors to potential harm and, therefore, a stay in this case would be inappropriate.

### D.  Whether a Stay is in the Public Interest

Finally, in order to determine whether a stay pending appeal should be granted, the Court

must consider whether a stay is in the public interest.  As the court explained in *In re Doctors*

*Hospital of Hyde Park, Inc.*, 376 B.R. 242 (Bankr. N.D. Ill. 2007), "[t]he public policy behind

bankruptcy is the equality of distribution to creditor within the priorities established by the Code

within a reasonable time."  *Id.* at 249. In view of the foregoing discussion regarding the harm to

creditors in the event of what will likely be unreasonable delay, the Court finds that the

imposition of a stay pending appeal would be contrary to the public interest.

## II.  Imposition of a Bond

In his motion, the Debtor requested that enforcement of the Court's March 1, 2019 orders

be stayed without bond.  In objection to that request, the Trustee filed a Motion for Approval of

Supersedeas Bond (*See.* Doc. #85) in which he requested that the Debtor be required to post a

$15,000.00 bond in order to obtain a stay.  As this Court has found that the Debtor has not

established grounds for a stay, the Trustee's motion is technically moot.  However, at the April

15, 2019 hearing, counsel for the Trustee indicated that he would be amenable to a stay if the

Debtor posted a bond in the amount owed to unsecured creditors.  Based on this representation,

the Court will stay its March 1, 2019 orders requiring the Debtor to file an amended plan *if, and*

*only if*, the Debtor posts a bond in the amount of $15,088.42 in order to protect the interests of

unsecured creditors in the event that the appeal is unsuccessful.[7]

### CONCLUSION

Based on the foregoing, the Debtor's Motion for Stay Pending Appeal absent the

payment of a bond is DENIED.  A separate order shall enter.


ENTERED: June 12, 2019

/s/ Laura K. Grandy

---

UNITED STATES BANKRUPTCY JUDGE

---

[7] Again, this all now appears to be moot as the Debtor filed an amended plan on May 2, 2019 which provides for full repayment to unsecured creditors prior to the expiration of the sixty-month plan duration.